Charles T. Major, J.
This is a claim for personal injuries sustained by claimant on April 25, 1952 while an inmate of Auburn State Prison.
*546 On May 8, 1948 claimant was sentenced to a term of 5 to 10 years for second degree assault, and was committed to Wallkill Prison. In June, 1949 he was transferred to Auburn Prison. About March 1, 1952 he was assigned to plate shop No. 2, to operate a hydraulic press which pressed out the rim on automobile license plates.
On April 25,1952 at about 8:00 to 8:30 in the morning, claimant and two inmates began working on this hydraulic press. Claimant sat on a stool in front of the machine with an inmate on his left who passed the dies, and the other inmate on his right who passed the plates to claimant. About 10:00 a.m., claimant reached in to straighten a plate on the die and the ram of the press came down unexpectedly, and badly cut and mutilated his right hand.
There was no guard between the operator and the press. However, it was equipped with an electrical safety device, which consisted of two buttons or plungers, one on each side of the machine frame, about two feet above the block. These controlled the operation of the ram. When both buttons were pushed in at one time, the ram would drop, process the plate, and automatically return to its original position. The ram could not come down by pushing only one of these buttons. The electric circuit was completed only when both buttons were pushed in. Upon removing the hand from one or both of the buttons, they automatically sprang back to their original position, thereby breaking the circuit.
A red tag hung on the machine directed the use of,tongs while inserting and removing plates. However, this was disregarded with the full knowledge and implied consent of the guards and prison authorities, after the installation of the electrical safety device. There were no tongs at the machine and none were furnished to claimant.
In February, 1952 from 3,500 to 4,000 plates per day were processed on this press. Before claimant became the operator, he with other coworkers were taken before the prison warden, who instructed them to produce 5,000 plates per day, or go to segregation, which is a method of punishment.
On April 24, 1952 the day before this accident, an alternate-operator complained that the press was not operating properly. The guard-electrician, Claude L. Campbell, delegated an inmate, by the name of Hatfield, to make repairs. Mr. Hatfield found a broken bakelite block in one of the button assemblies. This is a flat piece of composition material at the end of the button or plunger which prevents it from breaking and interfering with the springs which control the contact. The broken bakelite block caused the button to remain in a contact position, thereby *547 closing the circuit at the button, so that when the other button was pushed in, it caused the ram to come down. The supply of bakelite block replacements was exhausted and none was available for some time. To make repairs, Hatfield made a substitute block from a piece of maple wood, and the press was then operated up to the time of the accident.
At the same time claimant reached in with his right hand to straighten the plate, he put his left hand on the left button, and without touching the right button, the ram came down on his fingers.
After claimant’s removal to the hospital, the guard-electrician found that the right button, which contained the wooden substitute, was stuck, causing a closed circuit. Under these circumstances, the ram was set in motion by pushing the left button. This was the cause of the accident.
The court finds that the State permitted a substitution of a wooden block for the regular bakelite block by an inmate not shown to have the proper qualifications. Neither the guard-electrician nor other supervisor, upon whom the safety of the inmates and the proper operation of the press rested, examined the button or the block after the repairs and before this accident. Claimant was given no notice of the substitution or what repairs were made on the machine. He was not given additional instruction as to caution or care in the operation of the machine after repairs. The responsible representatives of the State knew that the machine was defective. Claimant was not provided with a safe place to work.
The State is chargeable with negligence which was the proximate cause of this accident and the resulting injuries to claimant. The claimant was working by direction and not by choice, and is not chargeable with assuming the risk. The claimant was not guilty of contributory negligence.
As a result of this accident, claimant’s right hand was badly mutilated and permanently injured. He sustained traumatic amputations of the distal phalanx of the first finger, the middle phalanx of the second finger, and the entire third and fourth fingers, resulting in about 50% loss of use of his right hand. He was hospitalized from April 25 to May 28, 1952 and was under observation for 14 additional days. He suffered considerable pain at the time of the accident, during and after treatment. He was 30 years of age at this time; and prior to imprisonment, he was a welder. His present condition prevents him from resuming his work as a welder. He is now employed as a crane operator in a scrap-yard at about the same wages as he earned as a welder.
*548 Claimant is awarded the sum of $6,000 for his pain, suffering and permanent injuries.
The foregoing constitutes the written and signed decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)
Judgment is directed accordingly.